483 P.2d 795

Robert L. STARKOVICH and Lois H. Starkovich, his wife, Kenneth F. Smith and Virginia Smith, his wife, and Corporate Investments Limited, Appellants,

v.

SOUTHWEST SAVINGS & LOAN ASSOCIATION, an Arizona corporation, Appellee.

No. 1 CA–CIV 1364.

Court of Appeals of Arizona,
Division 1,
Department A.
April 15, 1971.

Filipe K. Johansson, Phoenix, for appellants.

Richard W. Cahill and Bruce M. Phillips, Phoenix, for appellee.

CASE, Judge.

This appeal is from a judgment of the Superior Court of Maricopa County foreclosing certain realty mortgages in favor of Southwest Savings & Loan Association against defendants Robert L. Starkovich and Lois H. Starkovich, his wife, Kenneth F. Smith and Virginia Smith, his wife, and Corporate Investments Limited. The defendants raised the affirmative defense of usury. The parties will be referred to herein as they appeared in the trial court.

On April 21, 1960, defendant Robert L. Starkovich made "an application for combination loan of city real estate" to Associated Mortgage and Investment Company for a loan of $32,000.00. The first loan involved in this transaction was in the amount of $26,544.32, bearing interest at the rate of 6½% per annum for a term of twenty years, evidenced by a promissory note secured by a first mortgage in favor of a lender to be selected by Associated Mortgage; and a second loan in the amount of $5,455.64, bearing interest at 8% per annum for a term of twenty-five months, evidenced by a promissory note secured by a second mortgage in favor of Associated Mortgage. This application states in part:

"7. Upon demand to assign rentals payable under any present or future tenancy of the real property, and to pay all expenses incident to the loans including revenue stamps, taxes, recording fees, costs of title insurance, survey and other charges, and the sum of $1,920.00 as a service charge, finders fee and placement charge to cover all services rendered by the Company in connection with securing, completing and placing the first loan.

\*    \*    \*    \*    \*    \*

"The undersigned fully recognizes and understands and expressly agrees that:

1. He has applied for two loans, each to be secured by a separate mortgage, the first loan to be made by a lender to be selected and procured by the Company, and the second to be made by the Company.

\*    \*    \*    \*    \*    \*

"5. The service charge, finders fee and placement charge referred to above is a fee covering the services of the Company with reference to the first loan only."

On June 8, 1960, a total of twelve loans were made upon like terms and conditions on six contiguous parcels of land. Thereafter, an additional eight loans were made on other adjoining land, these loans not being involved in this appeal. On June 13, 1960, the first mortgages as set forth above were recorded and contemporaneously assigned to National Life and Casualty Insurance Company. On July 20, 1961, National Life and Casualty assigned these mortgages to Southwest Savings & Loan Association. On the same date Associated Mortgage assigned its second mortgages to Southwest Savings & Loan. Previous

to these assignments, defendants Starkovich had entered into a modification agreement with Southwest wherein the interest rate of the second mortgages was modified from 8 to 6½ percent and the term increased from two to twenty years, so that the first and second mortgages would be consistent, both as to interest rate and term. On March 1, 1963, another modification agreement was entered into between Starkovich and Southwest wherein the monthly payments on the loans were reduced to $207.00 per month.

On June 1, 1968, defendants defaulted in their payments and on August 16, 1968, plaintiff filed two complaints, each seeking foreclosure of ten mortgages. Defendants filed an answer and counterclaim alleging that the transaction was usurious. The file reflects that plaintiff filed an affidavit of default in one of the actions the same day that defendants filed their answer and counterclaim. On October 10, 1968, defendants filed an affidavit of default and entry of default arising from the failure of the plaintiff to file a reply to the counterclaim. Plaintiff filed a motion to set aside this default pursuant to Rules 55(d) and 60(c), Rules of Civil Procedure, 16 A.R.S., which was granted. The two actions were consolidated for trial purposes and tried to the court sitting without a jury who found in favor of plaintiff.

Two questions are raised:

Were the loans usurious?

Did the trial court abuse its discretion in granting plaintiff's motion to set aside the entry of default?

Directing our attention first to the question of usury, we find that our legislature, at the time of the events in question, defined it as follows:

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or greater value for the loan or forebearance of any money, goods, or things in action, than eight dollars on one hundred dollars, for one year. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest." § 44–1202, A.R.S.

In the case of Seargeant v. Smith, 63 Ariz. 466, 468, 163 P.2d 680, 681 (1945), our Supreme Court stated that in deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. These requisites are:

(1) An unlawful intent;

(2) the subject-matter must be money or money's equivalent;

(3) a loan or forebearance;

(4) the sum loaned must be absolutely, not contingently, repayable; and

(5) there must be an exaction for the use of the loan of something in excess of what is allowed by law.

If all these requisites are found to be present, the transaction will be condemned as usurious, whatever form it may assume, and despite any disguise it may wear. But, if any one of these requisites is lacking, the transaction is not usurious, although it may bear the outward marks of usury.

We approve the following statement contained in 91 C.J.S. Usury, § 11, at page 579–580 (1955):

"If an agreement can reasonably be construed as nonusurious, it should be so construed. The question of usury in loan transactions must be determined by construing all the papers executed in connection therewith, and not from isolated clauses and provisions therein. The courts, therefore, will not hold a contract to be in violation of the usury laws unless on a fair and reasonable construction of all of its terms, in view of the dealings of the parties, it is manifest that the intent of the parties was to engage in such a transaction as is forbidden by those laws. They have no right, however, to depart from the terms in which the contract is expressed to

make legal what the parties have made unlawful. In determining whether a loan transaction is usurious, the courts will give effect to the intention of the parties, as reflected in the contract, but an unlawful intent will not be imputed as long as the acts of the parties admit of a construction which will render them lawful. If two reasonable constructions are possible, by one of which the contract will be legal and valid, while by the other it will be usurious and unlawful, the court will always adopt the former. In short, the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained on any other hypothesis."

Defendants contend that the $1,-920.00 "service fee", was in fact interest, hence the transactions were usurious. We do not agree.

It is apparent from a reading of the documents involved herein that amount was to be considered as a service charge or commission for placing the first loan.

Defendant Starkovich stated in response to questioning from plaintiff's counsel as follows:

"Q: Do you have any idea what a mortgage broker is?

"A: I assume a mortgage broker is somebody who brokers money.

"Q: What does that mean to you?

"A: That they handle somebody else's money, that they don't have the funds themselves. Mortgage backer (sic) is somebody I think that mortgages his own funds. I assume. That's my understanding.

"Q: *And this is the assumption you had of the Associated Mortgage at the time you made your application for loan funds?*

"A: *I assumed that.*" (emphasis supplied)

We do not feel it necessary for a determination of the second issue raised by defendants that our reasoning be set forth in detail. We find that the trial court did not abuse its discretion in setting aside the entry of default against the plaintiff.

The Judgment is affirmed.

STEVENS, P. J., and DONOFRIO, J., concur.